## PATTERSON v. HEWITT.

### APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF NEW MEXICO.

No. 23. Argued October 25, 26, 1904.—Decided November 28, 1904.

The owners of a mining claim in New Mexico transferred their interests to one of their number as trustee, who was to retransfer to each one contributing his share of development expenses for a year, a one-eighth interest. Plaintiff, one of the parties, contributed his share and demanded a deed which the trustee refused to give. Plaintiff made no further demand and did not contribute any more to the expenses, but the trustee and some of the other owners continued to develop the claim, and finally succeeded in finding a valuable body of ore. Eight years after the former demand plaintiff commenced an action in equity to enforce the original trust. There is a statute in New Mexico to the effect that no action for the recovery of lands shall be commenced after a lapse of ten years, etc. *Held:*

That persons having claims to mining property in the course of development are bound to the utmost diligence in enforcing them, and in such cases the doctrine of laches is relentlessly enforced.

That while in actions at law, courts are bound by the literalism of statutes, in equity the question of unreasonable delay within the statutory limitation is still open, and that even where a statute of limitations exists and has been made applicable in general terms to suits in equity, defendant may avail of the laches of complainant, notwithstanding the time fixed by the statute has not expired.

That the refusal by a trustee of a demand to execute a deed in alleged pursuance of a trust agreement is a repudiation of the trust and opens the door to the defense of laches.

That a delay of eight years during which large sums of money have been spent in developing a mining property is inexcusable laches.

APPELLANTS C. Ewing Patterson, a resident of New Jersey, and Henry J. Patterson, a resident of New Mexico, on April 29,

1903, filed their bill of complaint in the District Court for Lincoln County, Territory of New Mexico, against John Y. Hewitt, William Watson, Mathew Hoyle, and Harvey B. Fergusson, residents of New Mexico, and the Old Abe Company, a corporation of the same Territory, to enforce a trust which is alleged to have existed between the appellants and the defendant Hewitt, and by virtue of which they sought to recover a one-fourth interest in two mining locations made in the name of John Y. Hewitt on the second day of May, 1884. The bill prayed for an accounting of proceeds of ores taken from the mines, and a lien on the property, for an injunction and the appointment of a receiver.

The facts in the case as found by the District Court and adopted by the Supreme Court are substantially as follows:

In 1881 the property in controversy was claimed by the appellants and by Watson, one of the defendants, under locations previously made by them. Between 1881 and 1883, appellants, in conjunction with the defendant Watson, did a large amount of work upon the claims, and were asserting their rights under the mining laws of the United States. During this time the same ground was also claimed by other parties, among whom was the defendant Hewitt. In August, 1883, a dispute arose in regard to this property between appellants and the defendant Watson on one side, and the other parties upon the other side.

The parties interested held a meeting in August or September, 1883, for the purpose of adjusting the differences then existing between them, and to endeavor, if possible, to arrive at an agreement whereby the interests of all would be protected. The two appellants, the defendant Watson and the defendant Hewitt, with several others who were interested, attended this meeting. The result was an agreement between them that all the old locations then existing, whether made by the appellants or any of the defendants, or conflicting claimants, should be from that date abandoned, surrendered and given up by all of the parties, and that the ground should be

put in possession of Hewitt as trustee, to hold in his own name for the benefit of all the parties then interested. It was also agreed that Hewitt, as such trustee, should make a deed to such of the said parties holding interests therein as should contribute their part to the work, labor and expenses necessary to obtain a patent to the land; but there was no agreement as to what should become of the interests of any one who failed to contribute his share of the expenses. It was also agreed that each of the appellants contributing his share of the expenses should receive a one-eighth interest in the location, and that the said Watson and Hewitt should each receive a one-eighth interest, part on account of their services and part on account of their interests in the ground, and that the remaining shares should go to other parties who were interested therein.

In pursuance of this agreement Hewitt took charge of the property, and together with the defendant Watson, and one of the appellants, Patterson, superintended and directed the work upon said mine during the year 1883 and part of the year 1884. In order to raise money for the working of the mine it was agreed that a one-sixth interest should be sold to H. B. Fergusson for five hundred dollars.

During 1884 and 1885 a sufficient amount of work was done upon the property to obtain a patent, and to discover mineral thereon. The appellants contributed their share of the work, which enabled the trustee to obtain a patent, and so far carried out their part of the agreement as to entitle them to a deed from the trustee for their one-eighth interest each, according to said agreement.

In April, 1885, the appellant Henry J. Patterson, in person and by his agent, demanded a deed from Hewitt, trustee, of the one-eighth interest to which he claimed to be entitled; but the defendant Hewitt at that time refused to make the said deed, and has ever since refused to execute the same, and has disputed his right thereto.

No demand for a deed appears to have been made by C.

Ewing Patterson until just before the commencement of this suit, when it was also refused.

In 1883, the complainant C. Ewing Patterson left New Mexico, and, up to the time of the bringing of this suit, had never returned there. The appellant Henry J. Patterson left in 1885, and from that time until the fall of 1892 was a non-resident of New Mexico.

From 1885 to 1890 the defendants performed a large amount of work, and expended a good deal of money on the mine in addition to the annual assessment required by the Government of the United States thereon; but neither of the appellants ever contributed or offered to contribute any part of the expenses of said work, or perform any labor.

In November, 1890, the defendants discovered a large body of rich ore in the mine, and since that date have taken out therefrom gold amounting to several hundred thousand dollars. In 1892, a corporation, known as the Old Abe Mining Co., was organized by the defendants Hewitt, Fergusson, Watson and others, and the ground in controversy, known as the Old Abe ground, including the interests claimed by the appellants, was turned over to the new corporation by the trustee Hewitt, and this corporation is now holding title thereto.

The appellant Henry J. Patterson, through his agent, Henry Burgess, had knowledge from April, 1885, that Hewitt had refused to carry out said agreement, and execute the deed to him and his co-complainant, and both of the appellants were again informed after April, 1885, that Hewitt had refused to make the said deeds or to carry out the trust agreement.

Upon this state of facts the District Court dismissed the bill upon the ground of laches. The Supreme Court of the Territory affirmed its action, 66 Pac. Rep. 552, and complainants appealed to this court.

Mr. W. B. Childers, with whom Mr. F. W. Clancy was on the brief, for appellants:

The agreement of 1883 created a mining partnership be-

tween all the parties thereto, with one of them, Hewitt, as trustee to hold the legal title for the benefit of the others. *Manville* v. *Parks*, 7 Colorado, 128; *Hirbour* v. *Reeding*, 3 Montana, 15; *Skillman* v. *Lachman*, 23 California, 203; *Settembre* v. *Putnam*, 30 California, 490. Such an agreement is not within the statute of frauds. *Munley* v. *Ennis*, 2 Colorado, 300; *Meylette* v. *Brennan*, 20 Colorado, 242; *Hirbour* v. *Reeding*, 3 Montana, 15; *Raymond* v. *Johnson*, 17 Washington, 232; *Moritz* v. *Lavelle*, 77 California, 10. But if it were, complete performance by complainants, as found by the courts below, would be sufficient to avoid the effect of the statute.

Even if the bill does not pray the dissolution of the partnership, it contains a prayer for general relief under which any relief consistent with the case stated in the bill can be given, although not specifically prayed for. *Texas* v. *Hardenberg*, 10 Wall. 85; *Tayloe* v. *Ins. Co.*, 9 How. 406; *Jones* v. *Van Doren*, 130 U. S. 692; *Hall* v. *Lonkey*, 57 California, 80.

Complainants were under no obligation to contribute to development expenses. *Turner* v. *Sawyer*, 150 U. S. 583.

The doctrine of laches does not apply to this case. Nothing less than the lapse of ten years provided by the statute of New Mexico can bar complainants. Compiled Laws, New Mexico, 1897, § 2938; 1865, p. 192. And see *Storms* v. *Ruggles*, Clark's Ch. 149; *Corning* v. *Stebbins*, 1 Barb. Ch. 591; *Varick* v. *Edwards*, Hoffman's Ch. 417; *S. C.*, 11 Paige's Ch. 291; *Hill* v. *Nash*, 73 Mississippi, 862; *Washington* v. *Soria*, 19 So. Rep. 487; *Cross* v. *Allen*, 141 U. S. 537; *Bryan* v. *Kales*, 134 U. S. 126; *Calhoun* v. *Delhi*, 24 N. E. Rep. 27. The New Mexico statute expressly provides, in effect, that no suit shall be barred within ten years. No part of the statute is superfluous. Potter's Dwarris on Stat. 144; *Early* v. *Doe*, 16 How. 617; *Postmaster-General* v. *Early*, 12 Wheat. 152; *United States* v. *Gooding*, 12 Wheat. 477; *Market Co.* v. *Hoffman*, 101 U. S. 115; *Allen* v. *Louisiana*, 103 U. S. 84; *Mont-*

*clair* v. *Ramsdell,* 107 U. S. 152; *United States* v. *Fisher,* 109 U. S. 145. If this claim could be barred less than ten years mere delay is not sufficient unless accompanied by other acts of complainants or other circumstances in the case which make it inequitable to give the relief asked and impossible to compensate defendant for the injury which might thereby be inflicted. There is nothing in the circumstances of the present case which makes it inequitable to give the complainants the relief demanded to which they are manifestly entitled under the findings. *Hammond* v. *Hopkins,* 143 U. S. 250; *Galliher* v. *Cadwell,* 145 U. S. 368; *Halstead* v. *Grinnan,* 152 U. S. 416; *Penn Mut. Life Ins. Co.* v. *Austin,* 168 U. S. 698; *Abraham* v. *Ordway,* 158 U. S. 420; *Rubber* v. *Rothery,* 107 N. Y. 315; *Railroad Co.* v. *Dubois,* 12 Wall. 64; *Lux* v. *Haggin,* 69 California, 267; *Waler* v. *Nelson,* 18 So. Rep. (Ala.), 155, and cases cited; Wood on Limitations, secs. 61–63; *Kline* v. *Vogel,* 90 Missouri, 250; Perry on Trusts, § 850; *Hill* v. *Epley,* 31 Pa. St. 333; *Steel* v. *Smelting Co.,* 106 U. S. 456; *Brant* v. *Virginia Co.,* 93 U. S. 336; *Ross* v. *Payson,* 43 N. E. Rep. 402; *McIntyre* v. *Pryor,* 173 U. S. 53; *Johnston* v. *Standard Mining Co.,* 148 U. S. 370; *Hanner* v. *Moulton,* 138 U. S. 495.

The cases cited in the opinion below can be distinguished under the statute of New Mexico.

The bar of a statute of limitations must be set up by defendant in some formal way in the record, in order to be available. Buswell on Limit., 525 *et seq.*; 13 Ency. Pl. & Pr., 181; *Sanger* v. *Nightingale,* 122 U. S. 183; *Retzer* v. *Wood,* 109 U. S. 187.

In this case, no statute of limitations was pleaded by defendants, and it is too late for them to find any protection by its provisions in an appellate court.

*Mr. H. B. Fergusson* for appellee:

Appellants delayed the institution of their suit in this case for at least eight years. This, under the facts, is laches. *Twin-Lick Oil Co.* v. *Marbury,* 91 U. S. 587; *Great West Min. Co.* v. *Woodmas of Alston Min. Co.,* 23 Pac. Rep. 908; *Kinne*

v. *Webb,* 49 Fed. Rep. 512; *Harwood* v. *Railroad Co.,* 17 Wall. 78; *Brown* v. *Co. of Buena Vista,* 95 U. S. 157; *Hayward* v. *Bank,* 96 U. S. 611; *Holgate* v. *Eaton,* 116 U. S. 33; *Societe Fonciere* v. *Milliken,* 135 U. S. 304; *Hammond* v. *Hopkins,* 143 U. S. 224; *Hoyt* v. *Latham,* 143 U. S. 567; also 54 Fed. Rep. 34; *Pratt* v. *California Min. Co.,* 24 Fed. Rep. 369; *Manning* v. *San Jacinto Tin Co.,* 9 Fed. Rep. 726. *Kline* v. *Vogel,* 1 S. W. Rep. 733; *Halsted* v. *Grinnan,* 152 U. S. 412; *Richards* v. *Mackall,* 124 U. S. 183; *McCabe* v. *Mathews,* 133 U. S. 550; *Evers* v. *Watson,* 156 U. S. 327; *Johnson* v. *Atl. Transit Co.,* 156 U. S. 618; *Johnston* v. *Min. Co.,* 148 U. S. 360; *Foster* v. *Railroad Co.,* 146 U. S. 88.

Complainants are required to allege and prove satisfactory reasons or excuses for long delay. *Badger* v. *Badger,* 2 Wall. 87; *Godden* v. *Kimmel,* 99 U. S. 201.

Complainants are held to diligence in efforts to ascertain; and means of knowledge are held to be the same as knowledge. *Morris* v. *Haggin,* 28 Fed. Rep. 275; *Grimes* v. *Sanders,* 93 U. S. 55; *Mining Co.* v. *Watrous,* 61 Fed. Rep. 163.

Delay cannot be excused except by some actual hindrance or impediment caused by the fraud or concealment of the party in possession. *Wagner* v. *Baird,* 7 How. 234; *Lansdale* v. *Smith,* 106 U. S. 391.

The excuse of absence, ignorance and poverty are held not sufficient. *Naddo* v. *Bardon,* 51 Fed. Rep. 493.

In express, continuing trusts, the question of repudiation by the trustee is important. But even in express, continuing trusts, after such notice of repudiation, the statute of limitations and the doctrine of laches both apply in all their vigor. *Speidel* v. *Henrici,* 120 U. S. 377; *Philippi* v. *Philippi,* 115 U. S. 151; *Felix* v. *Patrick,* 145 U. S. 317; *Woods* v. *Carpenter,* 101 U. S. 140; *Godden* v. *Kimmel,* 99 U. S. 201; *Wallensak* v. *Reiher,* 115 U. S. 96.

Appellants' claim that the Statute of Limitations of New Mexico, limiting actions concerning real estate to ten years, and applying in terms to suits in equity, prevents courts of

equity from applying the doctrine of laches for delay short of ten years cannot be sustained. See Compiled Laws of New Mexico, 1897, § 2938.

Laches, however, is not, like limitation, a mere matter of time; but principally a question of the inequity of permitting the claims to be enforced; an inequity founded upon some change in the condition or relations of the property or parties. As to this see *Galliher* v. *Cadwell*, 145 U. S. 368; *McQuiddy* v. *Ware*, 17 Wall. 91; *Sullivan* v. *Railroad Co.*, 94 U. S. 807; *Davison* v. *Davis*, 125 U. S. 90; *Hall* v. *Russell*, 2 Fed. Cases, 648; *S. C.*, 101 U. S. 503; *S. C.*, 3 Sawyer, 506; *Manning* v. *Hayden*, 16 Fed. Cases, 645; *S. C.*, 106 U. S. 586; *S. C.*, 5 Sawyer, 360; *Lakin* v. *Sierra County*, 25 Fed. Rep. 337; *Bliss* v. *Pritchard* (1877), 67 Missouri, 181; *Kline* v. *Vogel* (Mo. 1886), 1 S. W. Rep. 733; *Tatum* v. *Holliday*, 59 Missouri, 426; *Landrum* v. *Union Bank*, 63 Missouri, 56; *Morseau* v. *Talbot*, 55 Missouri, 297; *Davis* v. *Fox*, 59 Missouri, 127; *Scruggs* v. *Decatur*, 5 So. Rep. 441; *Calhoun* v. *Delhi, etc.*, 24 N. E. Rep. 27; *Haywood* v. *Buffalo*, 14 N. Y. 540; *Venice* v. *Woodruff*, 62 N. Y. 462; *Springfield* v. *Bank*, 75 N. Y. 397; and see *Waller* v. *Nelson* (Ala.), 18 So. Rep. 154; *Frame* v. *Kenny*, 12 Am.Dec. 367; *Nettles* v. *Nettles*, 67 Alabama, 599; *James* v. *James*, 55 Alabama, 525; *Bergen* v. *Bennett*, Gaines Cases (N. Y.), 19; *Sheldon* v. *Kockwell*, 9 Wisconsin, 166, 184; *Novens* v. *White*, 6 Johns. Ch. 360; Kerr on Fraud and Mistake, 303; Story Eq. Jur. § 1520; Pomeroy's Eq. Jur. §§ 817, 917 and note.

Appellants are barred by §§ 2916, 2930, Compiled Laws, 1897, New Mexico.

The agreement, under which Hewitt's duties as trustee were prescribed and the rights of appellants were defined, was an "unwritten contract." Both the original bill of complaint of appellants and the findings of fact made by the courts below establish that no fraud or concealment of appellants' cause of action was practiced by Hewitt, but his denial of the alleged rights of appellants was prompt and open and con-

tinuously adhered to.   *St. Paul, &c., Ry. Co.* v. *Sage,* 49 Fed. Rep. 315; *Christy* v. *Sill,* 95 Pa. St. 315; *Hollinshead's Appeal,* 103 Pa. St. 158*a; Silliman* v. *Haas,* 25 Atl. Rep. 72; *Way* v. *Hooton,* 26 Atl. Rep. 784; *King* v. *Pardee,* 96 U. S. 90.; *Kellum* v. *Smith,* 33 Pa. St. 158; *Willard* v. *Willard,* 56 Pa. St. 119; *Porter* v. *Mayfield,* 21 Pa. St. 263; *Dole* v. *Wilson,* 40 N. W. Rep. 161; *Streitz* v. *Hartman,* 41 N. W. Rep. 804.

If so the trust agreement created an express trust as it was not to be performed within one year, it is void under the statute of frauds.   *Childers* v. *Talbot,* 16 Pac. Rep. 275; *Browning* v. *Browning,* 9 Pac. Rep. 677.

Mining claims are real estate.   Compiled Laws of New Mexico, 1897, § 2218; *Ducie* v. *Ford,* 19 Pac. Rep. 414.

MR. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

The defense of laches, which prompted the dismissal of the bill in this case, has so often been made the subject of discussion in this court that a citation of cases is quite unnecessary. Some degree of diligence in bringing suit is required under all systems of jurisprudence.   In actions at law, the question of diligence is determined by the words of the statute.   If an action be brought the day before the statutory time expires, it will be sustained; if a day after, it will be defeated.   In suits in equity the question is determined by the circumstances of each particular case.   The statute of limitations consorts with the rigid principles of the common law, but is ill adapted to the flexible remedies of a court of equity.   The statute frequently works great practical injustice—the doctrine of laches, never.   True, lapse of time is one of the chief ingredients, but there are others of almost equal importance. Change in the value of the property between the time the cause of action arose and the time the bill was filed; complainant's knowledge or ignorance of the facts constituting the cause of action, as well as his diligence in availing himself of the means

of knowledge within his control, are all material to be considered upon the question whether the suit was brought without unreasonable delay.

1. In the case under consideration the appellants claim the benefit of section 2938 of the Compiled Laws of New Mexico, to the following effect:

"No person or persons, nor their children or heirs, shall have, sue or maintain any action or suit, either in law or equity, for any lands, tenements or hereditaments, but within ten years next after his, her or their right to commence, have or maintain such suit shall have come, fallen or accrued," etc.

If this were an action of ejectment at law, there seems to be no question but what it could be maintained, since it was brought within ten years from the time the cause of action accrued; but where the statute is in terms applicable to suits in equity, as well as at law, it is ordinarily construed, in cases demanding equitable relief, as fixing a time beyond which the suit will not under any circumstances lie, but not as precluding the defense of laches, provided there has been unreasonable delay within the time limited by the statute. In an action at law courts are bound by the literalism of the statute, but in equity the question of unreasonable delay within the statutory limitation is still open. *Alsop* v. *Riker*, 155 U. S. 448, 460.

If this were not so, it would seem to follow that in the code States, where there is but one form of action applicable both to proceedings of a legal and equitable nature, a statute of limitations, general in its terms, would apply to suits of both descriptions and the doctrine of laches become practically obsolete. This, however, is far from being the case, as questions of laches are as often arising and being discussed in the code States as in the others. In a few cases where the statute of limitations is made applicable in terms to suits in equity, it has been construed as allowing a suit to be begun at any time within the period limited by the statute, notwithstanding the intermediate laches of the complainant, although in those

cases it will usually be found that the language of the statute is explicit and imperative. *Hill* v. *Nash*, 73 Mississippi, 849; *Washington* v. *Soria*, 73 Mississippi, 665.

But the weight of authority is the other way, and we consider the better rule to be that, even if the statute of limitations be made applicable in general terms to suits in equity, and not to any particular defense, the defendant may avail himself of the laches of the complainant, notwithstanding the time fixed by the statute has not expired. This has been expressly held in Alabama, *Scruggs* v. *Decatur Mineral & Land Co.*, 86 Alabama, 173; in Missouri, *Bliss* v. *Prichard*, 67 Missouri, 181; *Kline* v. *Vogel*, 90 Missouri, 239; and in New York, *Calhoun* v. *Millard*, 121 N. Y. 69. In the last case the question is discussed at considerable length by Chief Judge Andrews, and the conclusion reached that "the period of limitation of equitable actions, fixed by the statute, is not, where a purely equitable remedy is invoked, equivalent to a legislative direction that no period short of that time shall be a bar to relief in any case or precludes the court from denying relief in accordance with equitable principles for unreasonable delay, although the full period of ten years has not elapsed since the cause of action accrued. . . ."

Indeed, in some cases the diligence required is measured by months rather than by years. *Pollard* v. *Clayton*, 1 Kay & Johnson, 462; *Attwood* v. *Small*, 6 Clark & Finelly, 232.

And in others a delay of two, three or four years has been held fatal. *Twin-Lick Oil Co.* v. *Marbury*, 91 U. S. 587; *Hayward* v. *National Bank*, 96 U. S. 611; *Holgate* v. *Eaton*, 116 U. S. 33; *Hagerman* v. *Bates*, 5 Colorado App. 391; *Graff* v. *Portland Co.*, 12 Colorado App. 106.

2. The facts in this case, so far as they concern the applicability of the defense of laches, are that all prior locations made by the claimants to this land were abandoned in August, 1883, when an oral agreement was entered into that Hewitt should be appointed trustee for all concerned; that upon the performance of certain conditions by the parties interested he

should make a deed to each of such parties as should contribute his part to the work and expense necessary to obtain a patent; that each of the appellants contributed his share of the work in the years 1883 and 1884—enough to entitle each of them to a deed of his interest under the agreement; that in April, 1885, Henry J. Patterson demanded a deed of Hewitt, which was refused, but that C. Ewing Patterson did not demand his deed until just before the institution of this suit; that the defendants and their associates, from the year 1885 to 1890, performed a large amount of work in developing the mine to which neither of the appellants contributed any part; that in November, 1890, a large body of rich ore was discovered, and since that time gold to the amount of several hundred thousand dollars has been taken out. Both of the appellants left the Territory of New Mexico during the year 1885, and resided abroad up to the time of the beginning of this suit. Both were aware that Hewitt had refused to deed them their interest in the mine and in the patent which he in the meantime had obtained to the property.

It thus appears that the right of action accrued to the appellants in April, 1885, and that this suit was not begun until eight years thereafter—in 1893. Whether the refusal of Hewitt to make the deeds was right or wrong is not material here. There is no doubt from the findings that appellants had no share in the subsequent development of the mine or the discovery of the ore in 1890, and that it was through the efforts and perseverance of the defendants, and the aid they received from Fergusson, that they were put in possession of this valuable property. If appellants had expected a share in this property they should either have brought a bill promptly to enforce their rights, or at least contributed their proportionate share to the subsequent work and labor, and the expenses then incurred. To award them now a deed to their original interest in the property would be grossly unjust to the defendants, through whose exertions the value of the property was discovered and the mine put upon a paying basis. While

it is true the court might impose upon the appellants the payment of their proportionate share of labor and expenses as a condition of relief, it could not compensate the defendants for the risk assumed by them that their exertions would come to naught. There is no class of property more subject to sudden and violent fluctuations of value than mining lands. A location which to-day may have no salable value may in a month become worth its millions. Years may be spent in working such property apparently to no purpose, when suddenly a mass of rich ore may be discovered, from which an immense fortune is realized. Under such circumstance, persons having claims to such property are bound to the utmost diligence in enforcing them, and there is no class of cases in which the doctrine of laches has been more relentlessly enforced.

3. But little need be said in reply to appellants' argument, that a trust relation was established between these parties by the oral agreement of 1883, under which Hewitt was to take possession, hold the property for the benefit of all concerned, and ultimately to convey to each his proportionate share. In this connection it is sought to apply the familiar rule that neither laches nor the statute of limitations is applicable against an express trust, so long as that trust continues. Conceding all that can be claimed as to the existence of an express parol trust in this case, the refusal of Hewitt to execute the deed to H. J. Patterson of his interest in the property, of which both appellants had notice, was a distinct repudiation of such trust, which entitled the complainants to immediate relief and opened the door to the defense of laches. *Speidel* v. *Henrici*, 120 U. S. 377, 386; *Riddle* v. *Whitehill*, 135 U. S. 621, 634.

The Supreme Court of the Territory also found that the case was within section 2916 of the Compiled Laws of the Territory, requiring that all actions founded upon "unwritten contracts . . . or for relief upon the ground of fraud, and all other actions not herein otherwise provided for and specified," shall be brought within four years; and that this defense was not

VOL. CXCV—21

answered by section 2930, declaring that "none of the provisions of this act shall run against causes of action originating in or arising out of trusts, when the defendant has fraudulently concealed his cause of action, or the existence thereof, from the parties entitled or having the right thereto." As there was no evidence that the defendants had fraudulently concealed the facts from the appellants, and abundant proof that the facts were known to them, the latter section was held not to apply. While the case does not necessarily involve it, we see no reason to question the correctness of the court's conclusion on this point.

We are clearly of the opinion that the delay of eight years in this case was inexcusable, and the decree of the court below must, therefore, be

*Affirmed.*