[No. 15006.   Department Two.   March 28, 1919.]

# E. G. Harvey, *Appellant,* v. Laurier Mining Company et al., *Respondents.*[1]

Equity (40)—Mines and Minerals (12)—Action to Recover Interest—Laches. The owner of a fourth interest in mining locations, who knew that annual assessment work was done by a relocator acquiring the title, and stood by for ten years without offering to pay his proportion, is estopped by his laches from claiming an interest under a verbal agreement that he was to retain his interest if he would pay his part of the expenses.

Appeal from a judgment of the superior court for Ferry county, Neal, J., entered November 9, 1917, upon findings in favor of the defendants, in an action on contract, tried to the court.   Affirmed.

*G. V. Alexander* and *Samuel Porter,* for appellant.

*Merritt, Lantry & Merritt,* for respondents.

Mount, J.—This action was brought to recover an undivided one-quarter interest in two mining claims owned by the Laurier Mining Company. The plaintiff alleged that he is the owner of the one-quarter interest by reason of a trust agreement which was entered into between the defendant Stewart and himself. The defendants denied any trust agreement, and alleged that the cause of action was barred by the statute of limitations, and that plaintiff was also barred by reason of laches. Upon a trial of these issues to the court without a jury, the trial court was of the opinion that the plaintiff was guilty of laches, and therefore dismissed the action. The plaintiff has appealed.

It appears that, in the year 1900, one Brunskill located two mining claims in Ferry county. One of these

[1]Reported in 179 Pac. 864.

claims was called the Mountain View mining claim, and the other was called the Gladiator mining claim. In 1901, one William Anderson acquired an undivided one-quarter interest in these two mining claims. Thereafter, in the years 1901, 1902, and 1903, the assessment work required by law to be done to hold possession of the mining claims was done by the then owners. The assessment work for the year 1904 was not done. In 1905, the respondent Grant A. Stewart relocated these mining claims, under the names of the Judge mining claim and the Western mining claim. These were located in the name of Mr. Stewart. Thereafter, in the year 1908, the respondent Stewart conveyed these two mining claims to his brother, Dayton H. Stewart, and thereafter the Laurier Mining Company, a corporation, was organized, and the two claims were conveyed to the Laurier Mining Company, and stock of this company was placed upon the market and sold.

It is claimed by the appellant that, at the time Stewart relocated the mining claims under the names of the Judge and the Western mining claims, it was agreed that the interest of William Anderson should be maintained in the property. Mr. Stewart denied that any such agreement was made. There was some evidence to the effect that, after these claims had been relocated by Mr. Stewart, it was stated to Mr. Anderson that he could retain his undivided one-quarter interest in the property provided he would pay his part of the expenses, and the court found that there was such an understanding. In the year 1915, Mr. Anderson conveyed his undivided one-quarter interest to the appellant, for a consideration of $100 in cash and $1,400 to be paid in the event the appellant should maintain this action and acquire a one-quarter interest.

It is conceded that, after the relocation of these

claims by Mr. Stewart, in the year 1905, Mr. Anderson lived near the mining claims for three or four years. It is also conceded that he has never paid, and never offered to pay, any part of the expenses or assessment or other work done upon the property; and it is conceded that the Laurier Mining Company, after its incorporation, acquired title and has developed the property until it has become of considerable value. In other words, Mr. Anderson stood by from the year 1904 until the year 1915, contributing nothing toward the success of the mines, and apparently abandoned whatever interest he had. We think it is apparent, therefore, that the claim now made by the appellant must be regarded as a stale claim, under all the authorities. In the case of *Cunningham v. Independence Consol. Min. Co.,* 58 Wash. 371, 108 Pac. 956, we said, in quoting from *Patterson v. Hewitt,* 195 U. S. 309:

" 'While it is true the court might impose upon the appellants the payment of their proportionate share of labor and expenses as a condition of relief, it could not compensate the defendants for the risk assumed by them that their exertions would come to naught. There is no class of property more subject to sudden and violent fluctuations of value than mining lands. A location which today may have no salable value may in a 'month become worth its millions. Years may be spent in working such property apparently to no purpose, when suddenly a mass of rich ore may be discovered, from which an immense fortune is realized. Under such circumstances, persons having claims to such property are bound to the utmost diligence in enforcing them, and there is no class of cases in which the doctrine of laches has been more relentlessly enforced.' "

And in *Ferrell v. Lord,* 43 Wash. 667, 86 Pac. 1060, we said:

"The authorities show that, while lapse of time is one of the elements to be considered in applying this

equitable defense to stale claims, it is only one, and that it is not necessarily the controlling or most important one. Regard must be had to all of the facts and surrounding circumstances, and if, when carefully considered, they do not appeal to the conscience of the chancellor, on behalf of a claimant, the defense of laches should be allowed."

It appears in this case, without dispute, that Mr. Stewart relocated these claims in 1905. Mr. Anderson, who had previously owned a one-quarter interest in the ground, knew of this relocation. He stood by for more than ten years and permitted Mr. Stewart and the corporation formed by him to do the annual assessment work and develop the property; he made no objection thereto, never offered to pay any part of the expenses thereof, and after the property had been made valuable by the efforts of the Laurier Mining Company, he then disposed of his interest to the appellant for a consideration of $100, and $1,400 additional in case he shall win this lawsuit; and thereupon, after the lapse of more than ten years, the appellant brings this action to obtain what he claims to be his one-quarter interest. The appellant is one of the stockholders in the respondent mining company. It seems plain that, if there was an agreement by Mr. Stewart at the time he relocated the property to protect Mr. Anderson's interest therein upon his payment of the expenses, it was the duty of Mr. Anderson to at least offer to pay, within a reasonable time, his share of the expenses and thus show that he had not abandoned his interest in the claims. This was never done.

We are satisfied, under these circumstances, that the court correctly found that the claim was stale and dismissed the action.

The judgment is therefore affirmed.

HOLCOMB, PARKER, MAIN, and FULLERTON, JJ., concur.